

FILED

DEC  2 2008

CLERK, US DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division**

UNITED STATES OF AMERICA,

v.                                                    **Criminal Action No. 4:07cr81**

SAMUEL MANNING,

        Defendant.

## OPINION AND ORDER

On November 19, 2008, the court held an evidentiary hearing with respect to the

defendant's motion to dismiss the superseding indictment because of double jeopardy and the

immunity provision in the defendant's prior plea agreement.  Based upon the totality of the

circumstances, the credibility of the witnesses, the briefs submitted by the parties, the arguments

of counsel at the hearing, and for the reasons stated on the record and set forth below, the court

**DENIES** the defendant's motion to dismiss the indictment.

### Factual Background

1. The First Conspiracy, a.k.a. the "Powers Conspiracy" (Case No. 4:06cr109)

On September 16, 2006, the grand jury returned an indictment against the defendant,

Samuel Manning, and his codefendants, Kasine Powers, Antwan Clements, Mister Jones, and

Tianna Harewood, that included charges of drug conspiracy, several substantive drug distribution

counts, several firearm counts, continuing criminal enterprise, and obstruction of justice.

Manning was charged with conspiracy to distribute and possess with intent to distribute cocaine,

cocaine base, and heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count 1), possession

with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 6), and

two counts of use of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C.

§ 924(c)(1)(A) (Counts 11 and 12).  Count 1, alleges that from 1989 to 2006, Powers, Clements,

Manning, Jones, and Harewood conspired to possess with intent to distribute and distribute more

than fifty grams of cocaine base, more than five hundred grams of cocaine, and more than five

hundred grams of heroin in Newport News, Virginia.  Manning is mentioned in four of the overt

acts that were committed in furtherance of the conspiracy:

> 37.    In or about or between late 2003 and September 2004, in Newport News,
> Virginia, within the Eastern District of Virginia, Antwan Clements and Samuel
> Manning distributed 30 capsules of heroin at least three times a week during this
> period in the area of 21 St. and Jefferson Ave.
> 38.    In or about or between late 2003 and September 204, in Newport News, Virginia,
> within the Eastern District of Virginia, Antwan Clements and Samuel Manning,
> possessed firearms in furtherance of their drug trafficking.
> 41.    In or about Summer 2004, in Newport News, Virginia, within the Eastern District
> of Virginia, Kasine Powers, Antwan Clements, and Samuel Manning, abducted
> and robbed a co-conspirator in furtherance of drug trafficking.
> 51.    In or about late 2004, in Hampton, Virginia, within the Eastern District of
> Virginia, Antwan Clements, Samuel Manning and Mister Jones, cut and packaged
> heroin at a residence on Calvary Terrace.

The majority of crack cocaine dealings in the Powers conspiracy occurred from 1993 until 2002,

prior to Manning's involvement with the Powers conspiracy.

On November 9, 2006, Manning pled guilty to Count 1, conspiracy to distribute and

possess with intent to distribute more than five hundred grams of cocaine, more than one

kilogram of heroin, and more than fifty grams of cocaine base, and Count 11, possession of a

firearm in furtherance of a drug trafficking offense.  Manning's plea agreement included the

following immunity provision:

> The United States will not further criminally prosecute the defendant in the
> Eastern District of Virginia for the specific conduct described in the indictment or
> statement of facts and any related conduct known to the United States at the time
> of the defendant's plea.  The parties agree that the alleged murder [of Donald
> Smith] of which the defendant was acquitted in Newport News, Virginia in May

2006, is not related to the current indictment or prosecution and is therefore not relevant conduct under § 1B1.3 of the Federal Sentencing Guidelines.

The Statement of Facts the defendant signed as part of his guilty plea states that:

> The defendant was involved in the Powers organization, participating in the distribution of heroin in a certain geographic area.  From the spring of 2004 through 2006, the defendant was part of the Powers organization and participated in the distribution of quantities of heroin in Newport News, Virginia.
> . . .
> The parties agree that the alleged murder of which the defendant was acquitted on May 9, 2006, in Newport News, Virginia, was not related to the Powers Organization or this conspiracy.
> . . .
> During the course of the conspiracy, the organization was responsible for possessing with intent to distribute and distributing more than one kilogram of heroin, more than 500 grams of cocaine and more than 50 grams of cocaine base.  The majority of these events occurred in the Eastern District of Virginia, Newport News Division.

The Presentence Report prepared for Manning's disposition attributed Manning with 1,200 grams of heroin, and did not include any quantities of cocaine or cocaine base in Manning's guideline calculations.  The Presentence Report stated that Manning was involved in the Power's conspiracy from 2003 until his arrest in 2006.  The Presentence Report also lists, in addition to his codefendants, other coconspirators in the Powers conspiracy, including Marlon Pettaway, Michael Singleton, Kelvin Bazemore, Tourean Richardson, and Cory Jackson.  Neither the indictment, plea agreement, statement of facts, nor presentence report list Manning's drug dealings with Donald Smith, nor do they list Smith as a coconspirator to the Powers conspiracy.  The only mention of Smith is through the immunity provision in the presentence report and the exclusion statement in the statement of facts, both of which state that Smith's murder was not related to the Powers conspiracy.  On February 21, 2007, Manning was sentenced to 120 months imprisonment, which comprises of sixty months for Count 1 and sixty months for Count 11, to

3

be served consecutively.

At the hearing on November 19, 2008, several individuals, including Manning's coconspirators in the Powers conspiracy, testified as to Manning's drug transactions from 2000 until 2006, including Kasine Powers, Tianna Harewood, Michael Guess, Antoine Clements, Eric Davis, and Mister Jones. These witnesses testified that Clements introduced Manning to Powers in 2004, and thereafter, Manning sold heroin for Powers. Guess, Clements, Jones, and Powers testified that Manning only sold heroin for Powers, and none of them witnessed Manning selling cocaine base once he became involved in the Powers conspiracy. Powers and Clements testified that they knew of Donald Smith, but that they never bought cocaine base from Smith, nor did they sell cocaine base to Smith. Additionally, none of the evidence presented or witness testimony associated Donald Smith with the Powers conspiracy.

2.    The Second Conspiracy, a.k.a. the "Smith Conspiracy"

On August 14, 2007, a grand jury returned a superseding indictment against Samuel Manning and Marlon Pettaway. Count 1 charges Manning with conspiracy to distribute and possess with intent to distribute five grams or more of cocaine base in Newport News, Virginia from 2001 through March 2005, in violation of 21 U.S.C. § 846. Count 1 does not list any overt acts or coconspirators. Count 2 charges Manning with use of a firearm in furtherance of a drug trafficking crime, specifically the drug conspiracy listed in Count 1, and causing the death of Donald Smith in violation of 18 U.S.C. §§ 924(c), (j), and 2. Count 3 charges Manning with use of a firearm in furtherance of a drug trafficking crime, specifically the drug conspiracy listed in Count 1, in violation of 18 U.S.C. § 924(c). Pettaway is charged with being an accessory after the fact in violation of 18 U.S.C. §§ 3, 924(c) and 924(j) (Count 4), and possession of a firearm

4

after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1) (Count

5).

On August 8, 2008, the government filed a response to the defendant's request for a bill

of particulars, which states:

> 1. From in or about late 2001 until April 2002, in Newport News and Hampton, Virginia, within the Eastern District of Virginia, the defendant, Samuel Manning, on multiple occasions, was fronted cocaine base by Donald Smith.

> 2. From in or about late 2001 until April 2002, in Newport News and Hampton, Virginia, within the Eastern District of Virginia, the defendant, Samuel Manning, maintained a place for the distribution of cocaine base.

> 3. In or about October 2002, in the Eastern District of Virginia, the defendant, Samuel Manning, shot at Donald Smith over a drug debt.

> 4. In or about October 2003, in the Eastern District of Virginia, the defendant, Samuel Manning, possessed with intent to distribute cocaine base and a firearm.

> 5. On or about March 26, 2005, in Newport News, Virginia, in the Eastern District of Virginia, the defendant, Samuel Manning murdered Donald Smith.

Besides the government's response to the bill of particulars request, the evidence presented at the

evidentiary hearing and attached to the government's brief, establish that in 2001-2002 Smith

provided Manning with eight balls of cocaine base for $125. Smith also provided cocaine base

to Michael Guess during this time period. Manning and Smith then had a falling out, and

Manning refused to pay Smith for the cocaine base. In either 2002 or 2003, Manning and Smith

were then involved in a shootout, allegedly instigated by Manning's refusal to pay Smith for the

cocaine base. Manning then went to jail, where he met up with Antoine Clements, and Clements

later introduced Manning to Powers. On March 26, 2005, Manning, along with Clements,

Powers, and Pettaway went to the Majik City Club. Donald Smith was also present at the Majik

5

City Club that night. The government alleges that on that night, Manning saw Smith for the first time since the prior shooting. Manning allegedly took Powers's gun, and shot and killed Smith in the parking lot of the Majik City Club. Powers and Pettaway then allegedly disposed of the gun and Manning's clothing.

**Analysis**

The defendant argues that the second indictment alleging the Smith conspiracy should be dismissed for two reasons. First, double jeopardy bars the government from prosecuting Manning for the Smith drug conspiracy because it is connected to or part of the Powers conspiracy. Second, the immunity provision in Manning's plea agreement provides him with immunity for the Smith conspiracy.

    1.    Double Jeopardy

The Double Jeopardy Clause guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Fourth Circuit has held that "when a defendant puts double jeopardy in issue with a non-frivolous showing that an indictment charges him with an offense for which he was formerly placed in jeopardy, the burden shifts to the government to establish that there were in fact two separate offenses." United States v. Ragins, 840 F.2d 1184, 1192 (4th Cir. 1988); see also United States v. Mackins, 315 F.3d 399, 411 (4th Cir. 2003) (holding that the defendant failed to make a nonfrivolous showing of a double jeopardy violation because the defendant only generally referenced the previous trial transcript and failed to include the relevant portions, failed to offer any evidence in support of his double jeopardy claim, failed to argue the Ragins factors, and only relied upon the face of the two indictments). If the court finds that the defendant's double jeopardy objection is

6

not frivolous, then "the government must prove by a preponderance of the evidence that the indictments refer to two separate criminal agreements." Ragins, 840 F.2d at 1192 ("Because double jeopardy is not an element of the crime but rather a personal privilege, the government need only prove that there were in fact two separate offenses by a preponderance of the evidence."). To protect a defendant from successive conspiracy prosecutions, the Fourth Circuit adopted the "totality of the circumstances" test:

> Under this test the court is to consider five factors in assessing the validity of a double jeopardy claim lodged against successive conspiracy charges: (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as co-conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other description of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated.

Ragins, 840 F.2d at 1188; see also United States v. MacDougall, 790 F.2d 1135, 1144 (4th Cir. 1986). In applying the totality of the circumstances test, the court should adopt "a flexible application of the test rather than a rigid adherence." MacDougall, 790 F.2d at 1144. The double jeopardy conspiracy cases within the Fourth Circuit establish that no one factor is determinative, and that some overlap between the two alleged conspiracies in terms of time periods, geographical locations, coconspirators, overt acts, or substantive statutes does not preclude a determination that the defendant was involved in two separate conspiracies. See United States v. Jones, 162 F.3d 1157 (4th Cir. 1998) (unpublished) (affirming the district court's finding of two separate conspiracies even though both conspiracies involved the same time period, the same geographical location, and the same coconspirators because the second conspiracy had a different goal and did not constitute "the entirety of the agreement" alleged in the first conspiracy); United

States v. Hoyte, 51 F.3d 1239, 1249 (4th Cir. 1995) (affirming the district court's finding of two separate conspiracies even though the time period of the second conspiracy included the time period of the first conspiracy, both conspiracies involved drug sales in the Rockland Avenue area of Charlottesville, and both conspiracies even shared an overt act, because the two conspiracies involved different coconspirators and the first conspiracy involved a territory sharing agreement between competitors and the second conspiracy involved acquiring and selling cocaine base); United States v. McHan, 966 F.2d 134, 137-39 (4th Cir. 1992) (finding that the defendant was involved in two separate conspiracies even though both conspiracies had the same coconspirators and involved the purchase of marijuana in South Texas and its transportation to, and subsequent distribution in, Murphy, North Carolina, because the 1984-1986 conspiracy had a broader scope and organizational structure than the 1988 second conspiracy, and there was a true break between the two conspiracies); MacDougall, 790 F.2d at 1141-49 (holding that even though the two organizations involved the same personnel, shared the same locations, occurred during the same time period, and involved the same joint ventures, they were two separate organizations and two separate conspiracies because there were separate agreements, different management structures, and the two organizations pursued primarily independent ventures); but see United States v. Jarvis, 7 F.3d 404 (4th Cir. 1993) (finding that the two alleged conspiracies were in actuality one conspiracy because the time periods overlapped, the places where the conspiracies were formed and carried out were the same places, the coconspirators were the same for both conspiracies, the overt acts alleged were the same for both conspiracies, and both indictments charged the defendant with the same substantive statute).  Denial of a defendant's motion to dismiss on double jeopardy grounds falls within the "collateral order exception" to the "finality rule," and

therefore, it is subject to immediate appeal. <u>Abney v. United States</u>, 431 U.S. 641, 662 (1977).

At the hearing, the court determined that the defendant made a nonfrivilous showing that double jeopardy was at issue because the defendant established that the time periods of the two alleged conspiracies overlap, both conspiracies occurred in Newport News, Virginia, and both conspiracies involved cocaine base. The burden then shifted to the government to prove by a preponderance of the evidence that the defendant was involved in two separate conspiracies. The factors the court finds particularly significant to the determination of whether the Smith conspiracy is a separate conspiracy from the Powers conspiracy are the time periods of Manning's involvement in each conspiracy, the coconspirators to each conspiracy, the overt acts, and the nature of the agreements in each conspiracy. It is undisputed that both conspiracies involve drug distribution in the Newport News area, and allege violations of 21 U.S.C. § 846 and 814(a)(1).

When examining these factors, it is evident that the Powers conspiracy is a vast conspiracy involving numerous coconspirators over a significant period of time. The Powers conspiracy began in 1989 and lasted until 2006. The Powers conspiracy included Powers, Harewood, Clements, Richardson, Jones, Pettaway, Jackson, Singleton, and Bazemore, as well as many other individuals. Many of these individuals joined, left, or rejoined the Powers conspiracy at different times. For example, Clements was involved in the Powers conspiracy in the late 1990s, and in the early 2000s, Clements and Powers had a falling out and Clements stopped selling drugs with Powers. Clements later rejoined the Powers organization in the mid-2000s. Manning joined the Powers conspiracy in late 2003 or early 2004, and there is no evidence suggesting that Manning knew Powers before then or did any prior drugs dealings with Powers.

9

The court also finds relevant that none of the Powers coconspirators, nor any of the other evidence presented, suggested that Smith was ever involved in the Powers conspiracy. Powers and Clements state that they both knew of Smith, but that they never sold or bought drugs from Smith. The Powers conspiracy involved the selling of cocaine, cocaine base and heroin in the Newport News area. Manning, however, only sold heroin for the Powers conspiracy, and by the time Manning joined the Powers conspiracy in 2004, the Powers conspiracy had almost stopped distributing cocaine base altogether. Many of Manning's coconspirators in the Powers conspiracy testified that they did not witness Manning selling cocaine base once he joined the Powers conspiracy.

The Smith conspiracy, on the other hand, is a significantly smaller conspiracy that involved only Manning and Smith. The Smith conspiracy is alleged to have lasted from 2001 until 2005, when Smith was murdered; however, the drug sales are alleged to have occurred between 2001 and 2003. The Smith conspiracy is alleged to only involve cocaine base, and did not involve the distribution of either heroin or cocaine. According to the evidence the government presented, Smith would front Manning cocaine base that Manning would then sell on the streets. In either 2002 or 2003, Manning and Smith had a falling out, and Manning refused to pay Smith for the cocaine base. Manning and Smith were then involved in a shoot out, in which Smith shot Manning in the leg. Manning and Smith did not see one another again until the night of Smith's death in March 2005, and Manning is alleged to have shot Smith as payback for being shot in the leg.

The court finds that this case is more like MacDougall, Hoyte, and McHan than Jarvis. While the overall time periods of the Powers and Smith conspiracies overlap, and the substantive

statute and geographical location of the two conspiracies are the same, the government has

proven, based upon a totality of the circumstances, that the Smith conspiracy is a separate and

distinct conspiracy from the Powers conspiracy. First, the coconspirators to the two conspiracies

are different, and Smith is not alleged to be part of the Powers conspiracy by Powers, or any

other coconspirator to the Powers conspiracy. Second, Manning's involvement in the Powers

conspiracy dealt with heroin, and his involvement in the Smith conspiracy dealt with cocaine

base. Third, Manning's drug dealings with Smith predate his drug dealings with Powers. Fourth,

the scope and organization of the two conspiracies differ. The Smith conspiracy is much smaller

and involved an agreement between Manning and Smith to distribute cocaine base. The Powers

conspiracy has a much larger framework and involved multiple individuals selling different types

of drugs for Powers. Therefore, the court finds, by a preponderance of the evidence, that the

Smith conspiracy is a separate conspiracy from the Powers conspiracy, and the government is not

barred by double jeopardy for prosecuting Manning for his involvement in the Smith conspiracy.


      2.     <u>Plea Agreement Immunity</u>

      When interpreting the plea agreement, the court should look to contract law as a "guide to

ensure that each party receives the benefit of the bargain." <u>United States v. Jordan</u>, 509 F.3d 191,

195 (4th Cir. 2007). In applying standard contract law, the court should "enforce a plea

agreement's plain language in its ordinary sense," and should "not write the contracts of the

parties retroactively, but merely construe the terms of the contract the parties have previously

signed." <u>Id.</u> (internal citations and quotations omitted). The determination as to whether a

written agreement is unambiguous on its face is a matter of law for the court to decide. <u>Id.</u>

(citing United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986)).  Should the court determine

the written agreement to be unambiguous and there is no evidence of government overreaching,

then the court should interpret and enforce the agreement accordingly.  Id.  A plea agreement,

however, is analyzed with "greater scrutiny" than a commercial contract because "a defendant's

fundamental and constitutional rights are implicated when he is induced to plead guilty by reason

of a plea agreement."  Id. at 195-96 (citing United States v. McQueen, 108 F.3d 64, 66 (4th Cir.

1997)).  Therefore, the government is held "to a greater degree of responsibility than the

defendant . . . for imprecisions or ambiguities in the plea agreements."  Id. (quoting Harvey, 791

F.2d at 300).

> Manning's plea agreement for the Powers conspiracy states:
>
> The United States will not further criminally prosecute the defendant in the
> Eastern District of Virginia for the specific conduct described in the indictment or
> statement of facts and any related conduct known to the United States at the time
> of the defendant's plea.  The parties agree that the alleged murder of which the
> defendant was acquitted in Newport News, Virginia in May 2006, is not related to
> the current indictment or prosecution and is therefore not relevant conduct under §
> 1B1.3 of the Federal Sentencing Guidelines.

Both the government and the defendant agree that the immunity provision in the plea agreement

does not provide Manning with immunity for Count 2, use of a firearm in furtherance of a drug

trafficking crime causing the death of another, or for Count 3, use of a firearm in furtherance of a

drug trafficking crime.  At issue is whether Manning is entitled to immunity for Count 1,

conspiracy to distribute cocaine base.  Therefore, the court must determine if the immunity

provision is ambiguous, and whether the conspiracy alleged constitutes "related conduct known

to the United States at the time of the defendant's plea."

12

First, the court finds the immunity provision to be unambiguous. The sentence, "The United States will not further criminally prosecute the defendant in the Eastern District of Virginia for the specific conduct described in the indictment or statement of facts and any related conduct known to the United States at the time of the defendant's plea," means that the United States is giving the defendant immunity for the specific conduct stated in the indictment and statement of facts, and the United States is giving the defendant immunity for any related conduct known to the United States at the time of the defendant's plea. The second provision does not give the defendant immunity for all conduct known to the United States at the time the defendant pleads guilty; rather, it only gives the defendant immunity for conduct known to the United States that is related to the conduct the defendant is charged with.

The term "related conduct" also does not appear to be ambiguous, and there is no indication that the phrase has any other meaning other than its plain meaning. The Fourth Circuit has already interpreted the "conduct" as a broader concept than the word "crimes," and means its plain and ordinary meaning. Jordan, 509 F.3d at 196. Conduct means "'personal behavior, whether by action or inaction.'" Id. (quoting Black's Law Dictionary 399 (8th ed. 2004)). "Related conduct," as understood by its plain and ordinary meaning, is conduct that is associated with or tied to the crimes the defendant is pleading guilty to. See id; American Heritage Dictionary of the English Language 244 (4th ed. 2000) (defining related to mean "associated; connected"); Merriam Webster's Collegiate Dictionary 987 (8th ed.) ("to show or establish a logical or causal connection between"). The usage of the word "related" in the second sentence in the immunity provision, as well as Manning's statement of facts, further support the determination that the term "related" should be interpreted according to its plain and ordinary

13

meaning. <u>See</u> Plea Agreement ¶ 9 ("The parties agree that the alleged murder of which the defendant was acquitted in Newport News, Virginia in May 2006, is not <u>related to the current indictment or prosecution</u> . . . ") (emphasis added); Statement of Facts ¶ 4 ("The parties agree that the alleged murder of which the defendant was acquitted on May 9, 2006, in Newport News, Virginia, <u>was not related to the Powers Organization or this conspiracy</u>.") (emphasis added). Finally, defendant's then-counsel who negotiated the plea agreement testified at the hearing that it was his understanding in negotiating this agreement with the government that the term "related conduct" was to be understood to mean conduct related or relevant to the Powers conspiracy. Therefore, the court finds the phrase "related conduct" to be unambiguous, and should be interpreted according to its plain and ordinary meaning. "Related conduct" means personal behavior that is associated with or connected to the crimes the defendant is charged with and to which he is pleading guilty, and pursuant to the defendant's plea agreement, related conduct includes personal behavior on the part of the defendant that is associated with or connected to the Powers conspiracy or organization.

The court has already determined that the Smith conspiracy is a separate and distinct conspiracy from the Powers conspiracy. As previously noted, Manning joined the Powers conspiracy in 2004, after he stopped selling drugs for Smith, and no evidence has been presented alleging that Smith was related to or a part of the Powers conspiracy. Manning's involvement with the Powers conspiracy was limited to heroin, whereas the Smith conspiracy involved crack cocaine. Thus, the government can prosecute the defendant for his alleged conduct on behalf of the Smith conspiracy because it is not related to the Powers conspiracy. The government, however, cannot use as evidence any conduct on the part of the defendant related to the Powers

14

conspiracy in their prosecution of the defendant for the Smith conspiracy, as that conduct is covered by the immunity provision.

### Conclusion

For the reasons stated above, the court **DENIES** the defendant's motion to dismiss the indictment. Under the totality of the circumstances test, the court finds that the Smith conspiracy is a separate conspiracy from the Powers conspiracy, and thus double jeopardy does not bar the government from prosecuting the defendant for the Smith conspiracy. The court also finds that the defendant's plea agreement is unambiguous and allows the government to prosecute the defendant for conduct that is unrelated to the Powers conspiracy or organization.

The government and the defendant jointly requested that this court grant permission for both the double jeopardy and immunity issues to be entitled to interlocutory appeal. The defendant is entitled to an interlocutory appeal of the court's order denying the motion to dismiss on double jeopardy grounds, and generally, the defendant is not entitled to an interlocutory appeal of court's order denying the motion to dismiss the indictment pursuant to an immunity provision in the plea agreement. The court finds that should the defendant file an interlocutory appeal of the court's decision with respect to double jeopardy, there is good cause, and it is in the interest of justice, for the appellate court to also consider both issues at the same time because reversal of the court's decision as to either issue would mean the defendant cannot be prosecuted for these alleged crimes. Therefore, to the extent that it may be necessary under Rule 5 of the Rules of Appellate Procedure, the district gives the defendant permission to pursue an interlocutory appeal of the district court's denial of the defendant's motion to dismiss the indictment pursuant to the immunity provision in the defendant's prior plea agreement.

15

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

_____ /s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 2, 2008

16